**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

Jill Garcia,  )
 )
        Plaintiff,  )
 )   CV-07-0167-TUC-DCB
    v.  )
 )   **ORDER**
 )
Allstate Ins. Co.,  )
 )
 )
        Defendant.  )
_____)

This matter comes before the Court on Defendant's Motion for Summary Judgment. The Court has considered all of the documents filed in support of and in opposition to the motion.[1]

**FACTUAL AND PROCEDURAL BACKGROUND**

In May 1987, Plaintiff was hired by Defendant (an entity registered with the National Association of Securities Dealers (NASD)[2] as a financial services provider) as a Records Clerk. In 1995, Plaintiff completed the Defendant's Agent Training Program and became an Employee Agent in

---

[1] As this motion has been thoroughly briefed by both parties, the Court has determined that oral argument is not required to render a decision in this matter. *See Houston v. Bryan,* 725 F.2d 516 (9th Cir. 1984).

[2] The NASD was replaced in July 2007 by the Financial Industry Regulatory Authority (FINRA) as the self-regulatory agency overseeing the broker-dealer industry.

1

compliance with NASD rules and regulations.  In August 1998, Plaintiff was hired as an Agency Management Trainee and became a Manager in 1999. In 2001, Plaintiff became an Agency Consultant.  As an Agency Consultant, Plaintiff was a Designated Supervisory Principal for purposes of compliance with the NASD rules and regulations.  "Plaintiff was responsible for overseeing the activities of Allstate agents who are registered representatives with the NASD.  One of the representatives under Plaintiff's supervision for at least the last two years of her employment was Fred Adler.  He owned and operated an Allstate Agency called 'Adler Financial Services, Inc.'" (Motion at 3.)  It was Plaintiff's alleged family relationship and interactions with Adler Financial Services that led to inquiries from and an investigation by Defendant in 2005.  Shortly after this investigation, Plaintiff was terminated from her position with Defendant in January 2006.

On April 25, 2006, Plaintiff filed a claim of discriminatory termination from employment based on sex with the Equal Employment Opportunity Commission (EEOC) and Arizona Civil Rights Division. (Doc. No. 21, Ex. 42.) In January 2007, after an investigation, the EEOC/Civil Rights Division dismissed her claim for failure to find facts supporting discrimination. (*Id.*)

On November 10, 2006, Plaintiff filed her Complaint in the Pima County Superior Court based on A.R.S. §23-1501 and Title VII, 42 U.S.C. §2000e, for discriminatory termination from employment based on sex.[3] On April 13, 2007, Defendant removed the action from state court to federal

---

[3] The parties have assured the Court that this is not a matter which is subject to mandatory NASD arbitration. (Doc. Nos. 35, 36, 38.)

2

court based on diversity of citizenship. On February 16, 2008, Defendant filed a Motion for Summary Judgment as to Jill Garcia with a Memorandum in Support and Statement of Facts (Doc. Nos. 11, 12, 13, 20, 21, 22.) On April 7, 2008, Plaintiff filed a Response and Statement of Facts (Doc. No. 25). On April 25, 2008, Defendant filed a Reply and Reply to Plaintiff's Statement of Facts (Doc. Nos. 31, 32), as well as an Affidavit (Doc. No. 33).

**STANDARD OF REVIEW**

To grant summary judgment, this court must find that the record clearly establishes that there exists "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). In determining whether summary judgment should issue, the facts and inferences from these facts are viewed in the light most favorable to the non-moving party and the burden is placed on the moving party to establish both that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law. *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986). The moving party may discharge this burden by showing there is an absence of evidence to support the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). The party opposing a motion for summary judgment cannot rest upon his mere allegation or denials of his pleadings, but must set forth specific facts showing there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986).

The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for

3

summary judgment. The requirement is that there be no genuine issue of material fact. *Id.* A material fact is any factual issue which might affect the outcome of the case under the governing substantive law. A material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Id.*

At the summary judgment stage, the trial judge's function is to determine whether there is a genuine issue for trial. There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. If the evidence is merely colorable or is not significantly probative, the judge may grant summary judgment. *Id.* Conclusory statements without factual support are insufficient to defeat a motion for summary judgment. *Nat'l Steel Corp. v. Golden Eagle Ins. Corp.,* 121 F.3d 496, 502 (9th Cir.1997).

**DISCUSSION**

Plaintiff is a woman who claims her termination from employment was discriminatory, because she was "not one of the boys" and she was replaced by a white male. (Doc. No. 21 at 141-142.) Plaintiff asserts that the Defendant's explanation that her termination was based on ethical violations involving unreported conflict of interest transactions by family members, prohibited by the NASD rules and regulations, was merely a pretext.

A. <u>Prima Facie Case</u>

Title VII prohibits employers from discriminating against an individual based on their sex. 42 U.S.C. § 2000e-2(a)(1) (2003). Here, the analysis is based on the *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973) burden shifting framework. Under this framework, the

4

Plaintiff first must establish a prima facie case of discrimination. A prima facie showing of discrimination under Title VII requires Plaintiff to show that "(1) [she] belonged to a protected class; (2)[she] was qualified for [the] job; (3)[she] was subjected to an adverse employment action; and (4) similarly situated employees not in [her] protected class received more favorable treatment." *Kang v. U. Lim America, Inc.*, 296 F.3d 810, 818 (9th Cir. 2002). Plaintiff alleges that she is a woman who was terminated from employment after working with the Defendant for eighteen years and was replaced with a white male, as well as treated differently from other white male employees for similar behavior. Plaintiff does establish a prima facie case of discrimination based on sex.

B. <u>Nondiscriminatory Reason for Adverse Employment Decision</u>

If the Plaintiff establishes a prima facie case, the burden then shifts to the Defendant to articulate a legitimate, nondiscriminatory reason for its allegedly discriminatory conduct. *Metoyer v. Chassman,* 504 F.3d 919, 931 n. 6 (9th Cir. 2007). If the employer articulates a legitimate reason for its action, "the presumption of discrimination drops out of the picture." *Id.* (quoting *Cornwell v. Electra Central Credit Union,* 439 F.3d 1018, 1028 (9th Cir.2006)).

Defendant submits a compelling legitimate reason for discharge, which is factually undisputed by Plaintiff. Luke Yang conducted the initial investigation of Plaintiff, as an Investigator in the Corporate Security, Law and Regulation Department of Defendant. The Investigative Report reads as follows:

> In 2005, I was instructed to conduct a Corporate Security investigation into a suspected conflict of interest involving

5

> Jill Garcia and Adler Financial Services, Inc. Corporate Security initiated this investigation after the Former Exclusive Financial Specialist informed the Regional Financial Services Leader that Garcia and her husband, Thomas E. Garcia, obtained an ownership interest in Adler Financial Services, Inc. As part of this investigation I interviewed Garcia, Fred Adler, Garcia's husband, and Garcia's father-in-law Ernesto Garcia. I also reviewed the Arizona Corporate Commission state of Arizona Public Access System and Adler's two Allstate R3001 Exclusive agency Agreement. Upon the conclusion of my investigation, I drafted a Summary of Evidence and submitted this to Field Vice President Michael A. Clark on December 14, 2005.

(Doc. No. 20 at 26.) That Report went on to conclude that:

> The weight of the evidence indicated that although Jill Garcia's husband, Thomas Garcia, acquired an unknown amount of shares of Adler Financial Services, Inc., the corporate entity that owned Adler's two Allstate R3001C Exclusive Agency Agreements, Thomas Garcia acquired the shares prior to marrying Jill Garcia. Further, there was no evidence indicating that Jill Garcia had any involvement with Ernesto Garcia's loan to Adler, that Jill Garcia intentionally failed to disclose Thomas Garcia's association with Adler Financial Services or that the circumstances surrounding Ernesto Garcia's loan to Adler impaired her judgment or influenced her decisions or actions concerning the Company business.

(Doc. No. 20, Ex. B at 47-48.) On December 14, 2005, no disciplinary action was recommended against Plaintiff by Investigator Yang in a memorandum of Summary of Evidence.

On January 10, 2006, a letter concerning "Jill Garcia - Termination Request," was sent from Gerald Sales, Human Resource Manager to Mike Clark, Field Vice President. The reason for request for termination was "Violation of Company Securities Licensing Policies for Designated Supervisory Principal and Human Resource Policy Manual Chapter 13." The letter was based on advice to terminate Plaintiff from employment rendered by corporate counsel, Judith Gaston, Esq. In sum, based on Plaintiff's violation of the conflict of interest rules governing NASD

regulated persons and entities, Defendant was no longer comfortable with Plaintiff supervising the financial services branch of the company. "Registered representatives are Allstate Exclusive Agents and Allstate Exclusive Financial Specialists, independent contractors and employees, who are licensed to sell financial products though their affiliation with broker dealer, Allstate Financial Services LLC. Allstate Financial is a subsidiary of Allstate and is registered with the NASD. Registered representatives who are affiliated with the broker-dealer and Allstate employees who supervise registered representatives are both charged with complying with the NASD rules and the rules of Allstate Financial." (Gaston Affidavit at 5-6.) "The Allstate Broker Dealer determined that it did not wish to have Garcia continue in a supervisory capacity given the questionable activities in which Garcia engaged. Because Garcia's position requires her to be affiliated with the broker dealer in order to fulfill her supervisory responsibilities, she is unable to perform the duties of her position. Therefore, it is recommended that Garcia's employment be terminated." (Gaston Affidavit, Ex. A - Doc. No. 20 at 9.) "Garcia's failure to timely disclose to the Company her husband's interest in Adler Financial Services caused the broker dealer to question her integrity and independence in supervising Fred Adler." (Doc. No. 20 at 10.) "Garcia was questioned by management as to whether she or her husband had ownership involvement in Fred Adler's agencies. She indicated that they did not. When she learned that her husband and his family were involved, she failed to disclose it until she was interviewed by Corporate Security. During the investigation, Garcia admitted that her husband was listed as having collateral/shares in the agency

7

corporation owned by Fred Adler, [for whom] she is the Designated Supervisory Principle." ( Doc. No. 20 at 10.) Gaston cited to violations of the Allstate Code of Ethics regarding conflict of interest resulting in the appearance of impropriety, as well as the Human Resources Guide that such a violation required immediate termination from employment. Plaintiff raises no material questions of fact regarding these events and circumstances.(DSOF at 2 - 7.)

C. <u>Pretext</u>

The Plaintiff may then offer evidence that "the employer's proffered nondiscriminatory reason is merely a pretext for discrimination." *Dominguez-Curry v. Nevada Transp. Dep't,* 424 F.3d 1027, 1037 (9th Cir.2005).

Plaintiff argues that the proffered legitimate reason is actually pretext for discrimination, because other male employees who engaged in the same or similar behavior were not terminated, as well as the length of time between the events in question and her actual termination from employment. (Doc. No. 21, Ex. 42.) In addition, Plaintiff claims she was replaced by a male employee. Finally, Plaintiff alleges that Tom Smith, the Allstate Territorial Distribution Leader for Arizona, made derogatory comments about women.

Plaintiff admits that she did not work for Smith directly and that she has no evidence to connect him to the decision to terminate Plaintiff. (DSOF at 7-8.) Defendant confirms that managers other than Smith made the final decision to terminate Plaintiff's employment based on the recommendation of corporate counsel, Gaston. (DSOF at 8.)

Generally, Plaintiff submits that her actions were not sufficient to warrant termination from employment and that the real reason for losing her job was that she is a woman. On the contrary, conflicts of interest and the appearance of impropriety in the securities world are never taken lightly, as follows:

> [Securities regulators have] been closely monitoring the Congressional hearings focused on the issues surrounding conflicts of interest faced by brokerage firms and their [financial] analysts. Public confidence in the securities markets has been jeopardized because the [financial] analyst community has failed to disclose their conflicts of interest. Therefore, it is incumbent upon securities regulators to initiate action to eliminate the problem and restore confidence in the markets.

NASD Notice to Members 01-45 (August 15, 2001).

Plaintiff does not dispute the underlying facts that resulted in the securities arm of Allstate losing confidence in Plaintiff's understanding of how to avoid conflicts of interest and the appearance of impropriety. Defendant offered an unrefuted articulable reason for Plaintiff's termination and Plaintiff does not produce, in turn, either direct or circumstantial evidence of pretext. Plaintiff did not produce evidence of a male counterpart being treated differently for similar behavior. In fact, the record reveals that a number of male and female employees were investigated and terminated for similar reasons. (Yang Affidavit; Gaston Affidavit.) The Defendant articulated legitimate business reasons for each of the actions of which Plaintiff complains, and Plaintiff has not "come forward with [any] evidence that tends to show that the employer's proffered motives were not the actual motives . . . " *Godwin v. Hunt Wesson, Inc.,* 150 F.3d 1217, 1222 (9th Cir. 1998) (explaining that "evidence of pretense must be specific and substantial in order to create

a triable issue with respect to whether the employer intended to discriminate on the basis of sex.").

There being no genuine issue as to any material fact, after viewing the facts and inferences from these facts in a light most favorable to the Plaintiff, Defendant is entitled to a judgment as a matter of law.

**CONCLUSION**

Based on the foregoing,

IT IS ORDERED the Defendant's Motion for Summary Judgment (Doc. No. 11) is **GRANTED**.

IT IS FURTHER ORDERED that this action is **DISMISSED** with prejudice, each party to bear their own attorney fees and costs. A Final Judgment shall enter separately.

DATED this 21st day of July, 2008.

David C. Bury
United States District Judge